UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

TRINIDAD CHAVEZ-FLOREZ,

                              Petitioner,

              v.                                             Civ. No. 9:00-CV-1576
                                                                   (FJS/GHL)

HANS G. WALKER, Superintendent,

                              Respondent.

_____

APPEARANCES:                             OF COUNSEL:

TRINIDAD CHAVEZ-FLOREZ
Petitioner, *pro se*
95-B-0934
Auburn Correctional Facility
135 State Street, Box 618
Auburn, NY 13024-9000

HON. ELIOT SPITZER                       MARIA MORAN, Esq.
Attorney General of the                  Assistant Attorney General
State of New York
615 Erie Blvd. West, Suite 102
Syracuse, NY 13204-2455

GEORGE H. LOWE, United States Magistrate Judge

_____      **REPORT-RECOMMENDATION**

**I.      Background**

        **A.      State Court Proceedings**

        According to the testimony adduced at trial, at approximately 1:00 a.m. on

August 27, 1993, Officer Jeffrey Thompson of the Oswego Police Department was

directed to respond to Church Street in the City of Oswego due to a complaint the police

department had received concerning a domestic dispute involving the unauthorized use

of a motor vehicle.  *See* Transcript of Trial of Trinidad Chavez-Florez (2/15/95) ("Trial

Tr.") at p. 652.  Officer Thompson thereafter proceeded to Church Street, and upon

arriving at the residence of Denise Stone-Martinez, he was informed by Stone-Martinez

that her boyfriend, petitioner, *pro se* Trinidad Chavez-Florez ("Chavez-Florez") had

stolen her car.  Trial Tr. at pp. 654-56.  Stone-Martinez invited Officer Thompson into

her residence to discuss that theft, and as Officer Thompson began preparing a police

report relating to the unauthorized use of Stone-Martinez's car, Chavez-Florez returned

to her home with her car.  Trial Tr. at pp. 656-60.  At the time, Officer Thompson

noticed that Chavez-Florez was wearing a grey tank-top shirt, dark pants and boots.

Trial Tr. at p. 667.  While Officer Thompson was speaking with Chavez-Florez, Stone-

Martinez approached the two, handed Chavez-Florez a bag containing his clothes, and

asked him to leave her home.  Trial Tr. at p. 661.  She and Chavez-Florez then began

speaking to each other in Spanish, after which Chavez-Florez began crying.  Trial Tr. at

pp. 662-63.  Chavez-Florez then left Stone-Martinez's home, removed a purple jacket

from the bag, put it over his shirt, sat on a curb and resumed crying.  Trial Tr. at pp. 664-

66.  He then indicated to Officer Thompson that he wished to remain in the area, Trial

Tr. at p. 666, however Officer Thompson told Chavez-Florez to leave.  Trial Tr. at p.

669.  Although Chavez-Florez initially complied with Officer Thompson's directive,

Chavez-Florez soon returned to Stone-Martinez's residence and began pounding on the

front door to her house.  Trial Tr. at pp. 669-72.  Officer Thompson again directed

Chavez-Florez to leave the area, and cautioned him that if he stayed on the premises he

would be sent to jail.  Trial Tr. at p. 673.

Later that same morning, Micayla Stone, Stone-Martinez's six year old daughter

(Trial Tr. at p. 430) heard her mother say "no honey, no honey."  Trial Tr. at p. 455.

Stone went downstairs and discovered her mother lying on the living room floor,

bleeding.  Trial Tr. at p. 455-56.  Stone attempted to stop the bleeding by placing toilet

paper on her mother's chin, Trial Tr. at p. 454, however she soon went to her next door

neighbor, Linda Thompson.  Trial Tr. at pp. 464-65.  At the time, Stone was crying and

covered with blood.  Trial Tr. at pp. 465-66.  Thompson's husband called the police,

who were then dispatched to Stone-Martinez's home.  Trial Tr. at p. 467-71.

Inside the home, the lifeless body of Stone-Martinez was found on the living

room floor.  Trial Tr. at pp. 474-76.  A large laceration was apparent on the right side of

the victim's neck.  Trial Tr. at p. 476.[1]  Additionally, Investigator Dennis Cooper of the

New York State police observed a bloody footprint on the porch near the front door of

the victim's house.  Trial Tr. at pp. 1029-32.

At approximately 4:10 a.m. on August 27, 1993, Officer Thompson returned to

the victim's home as part of the police investigation into the homicide.  Trial Tr. at p.

681.  When he arrived back at her house, he noticed that Stone-Martinez's car, which

---

[1]      The cause of Stone-Martinez's death was subsequently determined to be the
result of "multiple incisions and stab wounds."  Trial Tr. at p. 1483.

had been parked in front of her house earlier that same morning, was gone.  Trial Tr. at

pp. 681-82.  In light of Chavez-Florez's prior argument with Stone-Martinez, Officer

Thompson considered Chavez-Florez to be a suspect regarding the homicide.  Trial Tr.

at p. 682.

At approximately 6:00 a.m. on August 27, 1993, Deputy Boyd Workman of the

Oswego County Sheriff's Office observed Chavez-Florez walking alongside Route 481

near the City of Fulton.  Trial Tr. at pp. 605-07.  At the time, Deputy Workman noticed

blood stains on the front of Chavez-Florez's shirt.  Trial Tr. at pp. 608-12.  When asked

by Deputy Workman to identify himself, Chavez-Florez responded that his name was

"José."  Trial Tr. at p. 612.  However, Chavez-Florez did not respond when Deputy

Workman asked Chavez-Florez why there was blood on his shirt.  Trial Tr. at pp. 612-

13.  Chavez-Florez was then placed in the back of a patrol car, and was subsequently

identified by Officer Thompson as Trinidad Chavez-Florez.  Trial Tr. at pp. 682-83.

Officer Thompson noticed that Chavez-Florez was wearing the same shirt he had been

wearing earlier in the day, although the shirt contained blood stains which had not been

present on the shirt earlier that day.  Trial Tr. at pp. 684-86.

Chavez-Florez arrived at the Oswego Police Department at approximately 6:35

am. on August 27, 1993.  Trial Tr. at pp. 760-61.[2]  During "small talk" with the

---

[2]      Since Chavez-Florez had previously indicated to the police that he needed an
interpreter because he could not speak English, Eugenio Basualdo, an interpreter, was
present in the police station when Chavez-Florez arrived at the station.  Trial Tr. at p. 1683.

4

authorities that morning, Chavez-Florez discussed hunting deer.  Trial Tr. at pp. 1684-85.  Later that morning, Chavez-Florez's clothing, including his blood-stained shirt and pants, was removed and secured as evidence.  Trial Tr. at pp. 764-65.  Samples of what appeared to be blood were also taken from Chavez-Florez's right hand, right foot and underneath his right arm.  Trial Tr. at p. 780.  After the police advised Chavez-Florez that they were obtaining an attorney for him, he was fingerprinted, an imprint of his foot was taken, and his hands, feet and clothing were photographed.  Trial Tr. at pp. 1685-86.

On October 8, 1993, an Oswego County grand jury charged Chavez-Florez with the second degree murder of Stone-Martinez.  *See* Indictment no. 93-172 (Joint Appendix on Appeal ("Jt. App.") at p. 8).  Beginning on February 15, 1995, Chavez-Florez was tried before a jury on that charge in Oswego County Court with Oswego County Court Judge James W. McCarthy presiding.

At that trial, Investigator Cooper identified photographs of the bloody footprint found on the front porch of the victim's house.  Trial Tr. at p. 1030.  Investigator Cooper further testified that a transparency made from the footprint obtained from Chavez-Florez appeared to match the photograph of the bloody footprint that had been taken at the crime scene.  Trial Tr. at pp. 1037-42.

Thomas J. Walsh, a forensic serologist who was called as a prosecution witness, testified that Chavez-Florez's t-shirt contained human blood, Trial Tr. at pp. 1173-74, but that the testing for the type of blood contained on that shirt was inconclusive.  Trial

5

Tr. at p. 1222.  However, Maria Mick, an analyst employed by the New York State

Police Laboratory, testified that the deoxyribonucleic acid ("DNA") testing she

performed on the blood found on Chavez-Florez's shirt established that such blood

sample matched the victim's blood, and that the probability that the DNA on the shirt

may have come from an individual other than the victim was 1 in 23,000,000.  Trial Tr.

at pp. 1303-05.

In his defense, Chavez-Florez admitted that the blood on his t-shirt and pants was

that of the victim.  Trial Tr. at pp. 1669-71.  Chavez-Florez claimed, however, that the

blood stains were the result of a prior altercation between Stone-Martinez and him.

Trial Tr. at pp. 1667-68.  According to Chavez-Florez, on either August 15 or 16, 1995,

he struck Stone-Martinez after he discovered another man at her home.  Trial Tr. at p.

1667.  As a result, the victim's mouth began bleeding.  Trial Tr. at pp. 1667-78.

Chavez-Florez stated that Stone-Martinez then began spitting at him, causing the blood

from her mouth to hit his hand and shirt.  Trial Tr. at pp. 1670-71.  Chavez-Florez

testified that he then wiped the blood from his hand onto his pants.  Trial Tr. at p. 1671.

Additionally, Chavez-Florez indicated that he did not wash the t-shirt or pants during the

period of time between the date on which he struck the victim and the date she was

killed.  Trial Tr. at pp. 1736-37.  Chavez-Florez testified that he was not angry with

Stone-Martinez on August 27, 1995, Trial Tr. at p. 1750, and specifically denied killing

her.  Trial Tr. at pp. 1688-89.

On rebuttal, an Investigator with the New York State police testified that when the police removed the blood-stained t-shirt from Chavez-Florez's body on August 27, 1995, he volunteered that he had killed a deer the night before the victim was killed and carried the carcass on his back.  Trial Tr. at pp. 1832-39.[3]  The prosecution also called Keith Fairchild as a forensic expert to rebut Chavez-Florez's testimony regarding the source of the blood stains on his clothing.  Trial Tr. at pp. 1817-28.

At the conclusion of his trial, the jury found Chavez-Florez guilty of second degree murder.  Trial Tr. at p. 2055.  On April 13, 1995, Judge McCarthy sentenced Chavez-Florez to an indeterminate term of twenty-five years to life imprisonment.  *See* Sentencing Transcript (4/13/95) ("Sentencing Tr.") at pp. 19-20.

Chavez-Florez appealed his conviction and sentence to the New York State Supreme Court, Appellate Division, Fourth Department.  That court affirmed, *see People v. Chavez-Flores*,[4] 259 A.D.2d 984 (4th Dept. 1999), and the New York Court of Appeals denied Chavez-Florez's application for leave to appeal.  *See People v.*

---

[3]      Oswego County Court Judge John W. Brandt had previously ruled that Chavez-Florez's statements to both the translator and the authorities while Chavez-Florez was at the police station were inadmissible because they were made after Chavez-Florez had requested counsel.  *See People v. Chavez-Florez*, No. 93-172 (Oswego Cty. Ct. Sept. 30, 1995) at p. 5 (reproduced in Jt. App. at p. 141).

[4]      Although the Indictment and trial transcripts indicate petitioner's name as being "Trinidad Chavez-Florez," the Appellate Division referred to the petitioner by the surname of "Chavez-*Flores*" (emphasis added).  This Court will refer to petitioner by the surname provided by him in his federal petition, Chavez-Florez, *see* Petition at p. 1, however it will cite the Fourth Department's decision regarding Chavez-Florez by reference to the name utilized by that court in its decision.

*Chavez-Flores*, 94 N.Y.2d 821 (1999).  Petitioner states that he did not file any

challenges to his conviction or sentence following his direct appeal.  Petition at ¶ 10.

### B.    This Proceeding

Petitioner commenced this action on October 16, 2000.  *See* Petition.  In his

petition, Chavez-Florez alleges that:  1) the trial court erred in not suppressing the

imprint taken of Chavez-Florez's foot by the police, as well as the transparency that was

created from that imprint; 2) the prosecutor engaged in numerous acts of misconduct

during the course of Chavez-Florez's trial; 3) the prosecution improperly withheld

*Brady*[5] material from the defense; 4) errors committed by Judge McCarthy during the

course of the criminal trial deprived Chavez-Florez of his right to a fair trial; 5) the

evidence adduced at trial was insufficient to establish Chavez-Florez's guilt of the crime

charged; 6) the verdict was against the weight of the evidence; and 7) Chavez-Florez

was denied the effective assistance of counsel.  *See* Petition at attached pp. 1-26.[6]

The Office of the Attorney General for the State of New York, acting on

respondent's behalf, filed an answer and memorandum of law in opposition to the

---

[5]        *Brady v. Maryland*, 373 U.S. 83 (1963).

[6]        As will be seen, most of the grounds in Chavez-Florez's petition contain
multiple theories in support of his habeas application.  For example, the second ground for
relief alleges prosecutorial misconduct, error on the part of Judge McCarthy, as well as a
violation of Chavez-Florez's *Brady* rights.  *See* Petition, Ground Two.  After having
reviewed the submissions filed by the parties, this Court has found it appropriate to address
the claims raised by petitioner by reference to the legal theories asserted by Chavez-Florez,
rather than by the ground in the petition in which he raises his arguments.

petition.  Dkt. Nos. 7, 8.  Petitioner thereafter filed a "traverse" in further support of his

application.  Dkt. No. 9.  This matter has since been re-assigned to this Court by the

Hon. Frederick J. Scullin, Jr., Chief Judge, for the issuance of a report and

recommendation pursuant to 28 U.S.C. § 636(b) and Northern District of New York

Local Rule 72.3(c).  *See* Dkt. No. 10.

## II.   **DISCUSSION**

### A.   **Procedurally Barred Claims**

#### 1.   **Procedurally Defaulted Claims**

Respondent argues that Chavez-Florez has procedurally defaulted on several of

the claims raised in his petition.  Dkt. No. 8 at pp. 9-12.  This Court therefore initially

considers whether Chavez-Florez is procedurally barred from obtaining the relief he

seeks concerning any of the claims asserted in this action.  In considering this aspect of

respondent's argument, the Court notes that a federal court is precluded from reviewing

a habeas petition if the state court's rejection of the same claim rests on "independent

and adequate state grounds."  *Coleman v. Thompson*, 501 U.S. 722, 736 (1991); *Jones v.

Stinson*, 229 F.3d 112, 117 (2d Cir. 2000).  This occurs when the last state court issuing

a decision in the case held that its ruling rested on a state procedural bar.  *Harris v.

Reed*, 489 U.S. 255, 262 (1989); *Jones*, 229 F.3d at 118.

#### i.   **Failure to Suppress Prosecution Exhibits**

During the course of Chavez-Florez's trial, his counsel moved to suppress the

prosecution's use of People's Exhibit No. 46, which was an inked impression that had been taken of Chavez-Florez's foot at the Oswego County Jail.[7]  Trial Tr. at p. 880. Defense counsel argued that a prosecution witness's testimony established that the inked impression of Chavez-Florez's foot was taken after he was represented by counsel, and that therefore the taking of the impression without Chavez-Florez's counsel being notified constituted "a violation of [Chavez-Florez's] ... Fifth Amendment ... right against self-incrimination and Sixth Amendment, right to counsel."  Trial Tr. at p. 880.

Chavez-Florez similarly claims in this proceeding that the prosecution's use of People's Exhibit No. 46, as well as People's Exhibit No. 47, which was a transparency made of People's Exhibit No. 46 (*see* Trial Tr. at p. 1035), violated petitioner's Fifth and Sixth Amendment rights.  *See* Petition at attached p. 8.[8]

In denying trial counsel's motion to suppress People's Exhibit No. 46, Judge McCarthy determined that prior to trial, defense counsel could have determined, with due diligence, that the impression of Chavez-Florez's foot was taken by the police after he was represented by counsel.  Trial Tr. at pp. 923-24.  Since defense counsel did not

---

[7]        *See* Trial Tr. at pp. 875-80.

[8]        Petitioner also alleges that the use of these trial exhibits violated, *inter alia*, the provisions of New York's Criminal Procedure Law ("CPL") § 240, which discusses the circumstances under which a court order is required to obtain evidence from a defendant. *See* CPL § 240.40(2); *e.g. People v. Midgley*, 196 Misc.2d 19, 23 (Kings Cty. Ct. 2003) ("[e]ven upon the filing of an indictment or an accusatory instrument[,] a blood sample may be taken from a defendant, subject to constitutional limitations, only upon an order, pursuant to a motion made on notice").

file the motion to suppress the impression prior to trial, Judge McCarthy concluded that

the suppression motion made during trial was "not timely" and that the suppression issue

was therefore "waived."  Trial Tr. at p. 924.  In ruling on this issue in the context of

Chavez-Florez's direct appeal, the Appellate Division found that the "County Court

properly determined that the motion to suppress footprint evidence ... was untimely."

*Chavez-Flores*, 259 A.D.2d at 984 (citation omitted).

     A state court's finding that a party waived his right to contest an issue constitutes

an independent and adequate state ground relating to such claim, precluding federal

review of a habeas petitioner's claim.  *See Gonzalez v. Sullivan*, 934 F.2d 419, 421 (2d

Cir. 1991) ("a procedural waiver under state law sufficient to prevent review of the

[party's] substantive claim in the state courts also constitutes an independent and

adequate state ground that bars federal consideration of the substantive claim on habeas

corpus") (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)); *see also Wilson v. Supt.,*

*Attica Corr. Facility*, No. 9:00-CV-767, 2003 WL 22765351, at *4 (N.D.N.Y. Nov. 24,

2003) (Sharpe. M.J.) (citing *Gonzalez*) (other citations omitted), *adopted*, *Wilson v.*

*Supt., Attica Corr. Facility*, slip op. at 2 (N.D.N.Y. Feb. 3, 2004) (Mordue, J.).

     Since the state courts determined that Chavez-Florez waived his right to

challenge the admissibility of the evidence relating to the imprint taken of his foot, he

has procedurally defaulted on the first ground in his petition.  *See Wilson*, 2003 WL

22765351, at *4.[9]

Additionally, it is well-settled that the taking of fingerprints, blood samples and other non-testimonial evidence from an individual does not violate his or her Fifth Amendment right against self-incrimination or Sixth Amendment right to counsel.  *See Schmerber v. California*, 384 U.S. 757, 764-66 (1966) (compelling blood test, fingerprinting, photographing of defendant does not violate Fifth Amendment right against self-incrimination or Sixth Amendment right to counsel).  Thus, the taking of Petitioner's foot imprint, and the use at trial of evidence related to that imprint, cannot support a Fifth or Sixth Amendment habeas challenge.  *E.g. Schmerber*, 384 U.S. at 764-66.

###   ii.   **Prosecutorial Misconduct**

In opposing Chavez-Florez's appeal relating to his claims of prosecutorial misconduct, the District Attorney argued that "each of defendant's claims are either unpreserved, without merit or harmless error in light of the overwhelming evidence of

---

[9]     Respondent has not argued that petitioner is procedurally barred from asserting the first ground in his petition.  *See* Dkt. No. 8 at pp. 7-9.  Although a district court can raise, *sua sponte*, a petitioner's procedural default as a basis for the denial of federal habeas relief, *see, e.g., Acosta v. Artuz*, 221 F.3d 117, 121 (2d Cir. 2000) (citing *Yeatts v. Angelone*, 166 F.3d 255, 262 (4th Cir. 1999)), the Second Circuit has held that before a claim in a petition may be dismissed on procedural grounds on the court's own initiative, a district court must afford the petitioner notice of its intention to dismiss the claim on a procedural basis and an opportunity to be heard.  *Acosta*, 221 F.3d at 124.  Accordingly, if petitioner believes that his claim challenging the admissibility of the above-referenced trial exhibits should not be dismissed as procedurally defaulted, he must raise this contention in timely-filed objections to this Report-Recommendation.

guilt." *See* Respondent's Brief in Opposition to Chavez-Florez's Appeal (11/19/98) ("Resp. Br.") at p. 33.  In denying Chavez-Florez's claims alleging prosecutorial misconduct, the Fourth Department found that "[t]he majority of the alleged instances of misconduct have not been preserved for our review, and we decline to exercise our power to review them as a matter of discretion in the interest of justice." *Chavez-Flores*, 259 A.D.2d at 984.  That Court then opined that "[b]ecause those errors that were preserved were not so egregious or prejudicial as to deprive defendant of a fair trial, reversal is not warranted." *Id.* (internal quotation and citation omitted).

Although the Fourth Department's decision is ambiguous as to which of the prosecutorial misconduct claims raised by Chavez-Florez were procedurally barred, federal courts may properly review the state court record to discern which of the claims raised on appeal were necessarily denied on procedural grounds.  *See Sanchez-Reyes v. Strack*, 1995 WL 759029, at * 1 (N.D.N.Y. Dec. 15, 1995) (Pooler, D.J.).  Therefore, this Court reviews the prosecutorial misconduct claims asserted by petitioner in his habeas application in conjunction with the state court record below to determine which of those claims were procedurally barred.[10]

### a.   Source of Blood Stains on Chavez-Florez's Shirt

In support of his prosecutorial misconduct claim, Chavez-Florez initially argues

---

[10]      This Court considers Chavez-Florez's *Brady* claim, which petitioner has included in his claims alleging prosecutorial misconduct, *see* Petition at attached p. 12, *infra* in Section II(d)(2)(ii) of this Report-Recommendation.

that he was improperly questioned on cross-examination by the District Attorney whether Chavez-Florez informed his interpreter, Basualdo, that the blood stains on Chavez-Florez's shirt were due to the fact that he had hunted deer the day before the crime. Petition at attached p. 11. Petitioner also objects to Basualdo's rebuttal testimony wherein he testified that Chavez-Florez had indicated to Basualdo that the night before Stone-Martinez was killed, Chavez-Florez was hunting deer and had carried a deer over his shoulder. Petition at attached p. 11; *see also* Trial Tr. at pp. 1838-39. Finally, Chavez-Florez argues that during its summation, the prosecution improperly argued that Chavez-Florez's comment to Basualdo regarding the deer was an untrue version of how his shirt came to be stained with blood. Petition at attached p. 11; *see also* Trial Tr. at pp. 1963.

At trial, defense counsel never objected to: i) the cross-examination of Chavez-Florez about his comment to Basualdo regarding the possible source of the blood; ii) Basualdo's rebuttal testimony regarding that issue; or iii) the prosecution's comment regarding the foregoing during its summation. *See* Trial Tr. at pp. 1805-07, 1834-39 and 1963, respectively. As the District Attorney noted in his appellate brief, defense counsel's failure to lodge any objections to the foregoing at trial precluded appellate review of such claims. *See* Resp. Br. at p. 34 (citing CPL § 470.05(2)). Accordingly, "there is no good reason to believe that the Fourth Department decided these issues on the merits." *Sanchez-Reyes*, 1995 WL 759029, at *1 (citing *Quirama v. Michele*, 983

14

F.2d 12, 14 (2d Cir. 1993)).  Thus, this Court agrees with the respondent that these

claims are procedurally defaulted.  *See* Dkt. No. 8 at pp. 9-12.

### b.    Prosecution's Summation

Petitioner cites numerous aspects of the prosecutor's summation in support of his

claim that the prosecution engaged in misconduct during its closing argument.

Specifically, Chavez-Florez contends that during his summation, the prosecutor:  i)

improperly referred to Chavez-Florez as a "liar" on several occasions; ii) vouched for

the credibility of prosecution witnesses; iii) improperly shifted the burden of proof to

Chavez-Florez; iv) wrongfully characterized the evidence adduced at trial as

"uncontested" and referred to Chavez-Florez's failure to "produce evidence" in support

of his defense; v) denigrated Chavez-Florez's defense to the charge; and vi)

misrepresented the evidence by claiming that Chavez-Florez was barefoot at the time he

was arrested.  *See* Petition at attached pp.12-15.[11]

In opposing Chavez-Florez's appeal, the District Attorney noted that Chavez-

Florez's counsel did not lodge any objections during the prosecution's summation, and

the District Attorney accordingly argued that Chavez-Florez's prosecutorial misconduct

claims relating to the summation were not preserved for appellate review.  Resp. Br. at

p. 39.

---

[11]    Although petitioner also claims in this aspect of his petition that the
prosecution improperly referred to Chavez-Florez's failure to testify at trial, *see* Petition at
attached p. 13, this contention is not supported by the record and appears to overlook the fact
that Chavez-Florez testified at trial in his own defense.  *See* Trial Tr. at pp. 1657-1817.

In preparing this Report-Recommendation, this Court reviewed the entire closing argument delivered by the prosecution at Chavez-Florez's trial.  That review confirms the District Attorney's argument on appeal that defense counsel did not lodge any objections to the prosecution's summation.  *See* Trial Tr. at pp. 1952-1994.  Chavez-Florez therefore necessarily waived his right to challenge on appeal comments made during that argument.  *See Davis v. Miller*, No. 99 CIV. 2423, 1999 WL 1125055, at *5 (S.D.N.Y. Dec. 8, 1999) (citations omitted).  Thus, as respondent argues (Dkt. No. 8 at pp. 9-12), the Appellate Division denied these aspects of Chavez-Florez's prosecutorial misconduct claims on procedural grounds.  *Chavez-Flores*, 259 A.D.2d at 984; *see Sanchez-Reyes*, 1995 WL 759029, at *1 (citing *Quirama*, 983 F.2d at 14).

### c.      Appeal to Juror's Sympathy

Chavez-Florez also faults the prosecution because it referred to the anticipated testimony of Stone, the victim's six year old daughter, in its opening statement, and subsequently called her as a witness at trial.

In opposing Chavez-Florez's appeal, the District Attorney noted that Chavez-Florez's counsel did not object to either the prosecutor's opening statement or Stone's (unsworn) testimony as an improper appeal to the juror's sympathy, and that these claims were therefore unpreserved for appellate review.  Resp. Br. at p. 49.

In conjunction with this claim, this Court has reviewed both the prosecution's opening statement and Stone's trial testimony.  That review establishes that defense

counsel did not lodge any objections during the prosecution's opening statement, and that neither of the two objections raised by defense counsel during Stone's trial testimony were based upon an argument that the prosecutor was attempting to elicit sympathy from the jury.  *See* Trial Tr. at pp. 245-63; 448-59.  In light of New York's contemporaneous objection rule, *see* CPL § 470.05(2), it is clear that Chavez-Florez therefore waived any objections to the prosecutor's conduct in allegedly attempting to elicit sympathy from the jury.  *See People v. Richardson*, 177 A.D.2d 521, 521 (2d Dept. 1991) (citing CPL § 470.05(2)) (other citations omitted), *leave denied*, 79 N.Y.2d 863 (1992).  Therefore, as is argued by the respondent (Dkt. No. 8 at pp. 9-12), petitioner is procedurally barred from asserting this claim in his federal habeas petition.  *Chavez-Flores*, 259 A.D.2d at 984; *see Sanchez-Reyes*, 1995 WL 759029, at *1 (citing *Quirama*, 983 F.2d at 14).

### iii.    Trial Court Error During Prosecution's Rebuttal

In claiming that Judge McCarthy committed error during the course of Chavez-Florez's criminal trial, petitioner argues, *inter alia*, that during the prosecution's rebuttal, the trial court improperly:  a) permitted Fairchild to testify as an expert on blood trajectory and the source of blood on Chavez-Florez's shirt; b) allowed Basualdo's rebuttal testimony, which Chavez-Florez claims impermissibly bolstered the prosecution's case and allowed Basualdo to testify about statements Judge McCarthy had previously suppressed; and c) permitted Mark Knopp to testify about Chavez-

17

Florez's responses to questions posed to him after he had exercised his right to an attorney.  *See* Petition at attached pp. 11, 24-25.

In denying the aspect of Chavez-Florez's appeal which argued that Judge McCarthy erred in allowing the prosecution to introduce rebuttal evidence, the Fourth Department found that "[o]nly one of the alleged errors, i.e., the admission of testimony concerning the bloodstains on [Chavez-Florez's] shirt, is preserved for our review, and we decline to exercise our power to address the remainder of the alleged errors as a matter of discretion in the interest of justice." *Chavez-Flores*, 259 A.D.2d at 984.

A state court's determination that a claim was unpreserved for appellate review is a finding of procedural default.  *Duren v. Bennett*, 275 F.Supp.2d 374, 380 (E.D.N.Y. 2003); *see* CPL § 470.05.  Thus, respondent correctly argues that since the Appellate Division held that Chavez-Florez's challenges to the rebuttal testimony of Basualdo and Knopp were not preserved for review, he is procedurally barred from asserting them in this habeas proceeding.  *See* Dkt. No. 8 at pp. 9-12.[12]

### iv.      **Sufficiency of Evidence**

Chavez-Florez also argues that there was insufficient evidence adduced at trial to establish his guilt of the crime charged.  Petition at attached p. 10.  Respondent urges this Court to find that claim procedurally barred.  Dkt. No. 8 at pp. 9-12.

---

[12]      This Court addresses petitioner's claim that Judge McCarthy committed error in allowing Fairchild to offer rebuttal testimony *infra* at Section II(D)(2)(iii) of this Report-Recommendation.

18

In denying Chavez-Florez's challenge to the sufficiency of evidence when raised by him in his direct appeal, the Fourth Department found that Chavez-Florez had "failed to preserve for our review the present contention that the evidence is insufficient to support the conviction," and declined to exercise its power to review that argument as a matter of discretion in the interest of justice. *Chavez-Flores*, 259 A.D.2d at 984. As noted above, a state court's finding that a claim was unpreserved for appellate review is a finding of procedural default. *Duren*, 275 F.Supp.2d at 380. Thus, Chavez-Florez has procedurally defaulted on this aspect of petitioner's third ground for relief.

### 2.   <u>Unexhausted Claims</u>

 In addition to Chavez-Florez's claim which alleges that Judge McCarthy erred in allowing the prosecution to present rebuttal evidence against Chavez-Florez, petitioner also alleges in his federal petition that Judge McCarthy committed error during the course of the criminal trial when he:  i) failed to "correct the prosecutor's improper remarks" during the course of the prosecution's summation (Petition at attached p. 13); ii) did not provide a curative instruction after the prosecution referred to the evidence presented against Chavez-Florez as "uncontroverted" and "uncontradicted" (Petition at attached pp. 13-14); iii) failed to instruct the jury that it was not to base its verdict on sympathy or emotion (Petition at attached p. 18); and iv) neglected to inform the jury that a prosecution witness's reference to Chavez-Florez in prison attire was improper (Petition at attached p. 18).

Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies, or demonstrate that there is either an absence of available state remedies or that such remedies cannot adequately protect petitioner's rights. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994), *cert. denied*, 515 U.S. 1118 (1995). This exhaustion requirement is satisfied if the claim has been "fairly presented" to the state courts. *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*); *Morales v. Miller*, 41 F.Supp.2d 364, 374 (E.D.N.Y. 1999). Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye*, 696 F.2d at 192; *Morales*, 41 F.Supp.2d at 374.

None of the above-referenced claims regarding alleged errors of Judge McCarthy were raised by Chavez-Florez in his appellate brief. *See* Appellate Brief in *People v. Chavez-Florez* (8/28/98) ("App. Br."). Additionally, as noted above, Chavez-Florez has indicated that he did not file any state-court challenge to his conviction other than his direct appeal. *See* Petition at ¶ 10. Therefore, petitioner has not exhausted these claims alleging trial court error in the state courts.

When a claim has never been presented to the state courts, a federal court may

find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000), *cert. denied*, 532 U.S. 943 (2001).[13]  Therefore, this Court must determine whether it would be futile for Chavez-Florez to present the above-mentioned claims to the state courts.

Chavez-Florez cannot now pursue the above claims through an appeal to the Fourth Department because a defendant is "entitled to one (and only one) appeal to the Appellate Division."  *See Aparicio*, 269 F.3d at 91 (citations omitted).  Moreover, since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *id.* (citing CPL § 440.10(2)(c)), petitioner could not now properly raise these claims, which are all based on matters contained in the state court record, in a motion to vacate his judgment of conviction pursuant to CPL § 440.10.  *See Aparicio*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995).  Therefore, these claims are "deemed exhausted" for purposes of petitioner's habeas application.  *Spence v. Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v. Greiner*, 2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002).

_____

[13]     Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal district court has the authority to deny (but not grant) an unexhausted claim on the merits, and consider the exhausted claims on the merits.  *Aparicio*, 269 F.3d at 91 n.5; *Cuadrado v. Stinson*, 992 F.Supp. 685, 687 (S.D.N.Y. 1998).

21

Although these claims are "deemed exhausted," they are procedurally barred.  *See Aparicio*, 269 F.3d at 90 (citing *Coleman*, 501 U.S. at 735 n.1).[14]

### B.   Federal Review of Procedurally Barred Claims

Federal courts may only consider the substance of procedurally defaulted claims where the petitioner can establish both cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[15]  *Dixon v. Miller*, 293 F.3d 74, 80-81 (2d Cir.) (citing *Coleman*), *cert. denied*, 537 U.S. 955 (2002); *St. Helen v. Senkowski*, 374 F.3d 181, 184 (2d Cir. 2004) ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (other citations omitted), *cert. denied, St. Helen v. Miller*, ___ U.S. ___, 125 S.Ct. 871 (2005); *see generally Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

---

[14]      Respondent has not argued that any portion of Chavez-Florez's petition is unexhausted.  *See* Dkt. No. 8.  A district court can *sua sponte* raise a petitioner's failure to exhaust as a basis for the denial of federal habeas relief upon notice to the petitioner affording him an opportunity to be heard on this issue.  *Acosta*, 221 F.3d at 124 (citing *United States v. Vincent*, 507 F.2d 1309, 1312 (2d Cir.1974)).  Thus, as with the claims that this Court has found to be procedurally defaulted, *see supra*, n.9, if petitioner believes that the above-referenced claims alleging error on the part of the trial court should not be deemed exhausted and dismissed as procedurally barred, he must raise this contention in his objections to this Report-Recommendation.

[15]      A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon*, 293 F.3d at 81.

To establish "cause," a petitioner must show that some objective external factor impeded his ability to either comply with the relevant procedural rule or fully exhaust his federal claims.  *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Doleo v. Reynolds*, 2002 WL 922260, at *3 (S.D.N.Y. May 7, 2002). Examples of external factors include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal.  *Murray*, 477 U.S. at 488; *Bossett*, 41 F.3d at 829 (citing *Murray*); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1992); *Lovacco v. Stinson*, 2004 WL 1373167, at *3 (E.D.N.Y. June 11, 2004) (citing *Murray*).[16]

Although Chavez-Florez appears to argue that ineffective assistance of trial counsel establishes the requisite "cause" for his procedural defaults, *see* Petition at attached p. 26, as is discussed more fully *infra*, none of petitioner's ineffective assistance claims have merit.  As to the unexhausted claims, this Court notes that Chavez-Florez has never alleged, in either the state courts or this proceeding, that he received ineffective assistance because his appellate counsel failed to claim on appeal that Judge McCarthy committed the errors which Chavez-Florez now claims warrant the granting of the relief he seeks in his federal habeas petition.

---

[16]     However, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'"  *Coleman*, 501 U.S. at 752-53 (quoting *Murray*, 477 U.S. at 488).

Since Chavez-Florez has not established, in either his petition or traverse, cause for either his procedural defaults or his failure to exhaust the above-referenced claims, this Court need not decide whether he suffered prejudice because, absent proof that the failure to consider the merits of the claims would result in the continued incarceration of an individual who is actually innocent of the crime of which he stands convicted, federal habeas relief is unavailable as to procedurally barred claims unless ***both*** cause and prejudice is established.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) (emphasis added); *McLeod v. Moscicki*, 2003 WL 22427757, at *8 (S.D.N.Y. Oct. 22, 2003) (Francis, M.J.) (citing *Murray*, 477 U.S. at 494); *You v. Bennett*, 2003 WL 21847008, at *7 (E.D.N.Y. July 29, 2003) (citing *Coleman*, 501 U.S. at 750); *Ayuso v. Artuz*, 2001 WL 246437, at *9 (S.D.N.Y. Mar. 7, 2001); *Pou v. Keane*, 977 F.Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.).

Additionally, after reviewing the state court record, this Court finds no basis to conclude that Chavez-Florez is actually innocent of the second degree murder charge of which he was convicted.  Therefore, the Court recommends that the above-referenced claims be denied as procedurally barred.

C.    **Challenge to the Weight of the Evidence**

As part of his third ground for relief, Chavez-Florez claims that the jury's verdict was against the weight of the evidence.  *See* Petition at attached p. 19.

However, weight of the evidence review is a product of New York state statute

and therefore merely a state law issue.  *See* CPL § 470.15; *Cardena v. Giambruno*, 2004 WL 239722, at *4 (S.D.N.Y. Feb. 10, 2004) (citations omitted); *see also People v. Bleakley*, 69 N.Y.2d 490 (1987).  It is well-established that habeas corpus review is not available for errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991).  As such, no cognizable federal issue is presented by a habeas claim challenging the weight of the evidence adduced at trial.  *Cardena*, 2004 WL 239722, at *4; *Glisson v. Mantello*, 287 F.Supp.2d 414, 441 (S.D.N.Y. 2003) (citing *Givens v. Burge*, 2003 WL 1563775, at *10 (S.D.N.Y. Mar. 4, 2003)) (collecting cases); *McBride v. Senkowski*, 2002 WL 523275, at *4 n.2 (S.D.N.Y. Apr. 8, 2002) (citing *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)).  Thus, Chavez-Florez's federal challenge to the weight of the evidence offered against him at trial, *see* Petition at attached p. 19, is not cognizable in this action.[17]  *See Robinson v. Ricks*,  No. 00 CV 4526, 2004 WL 1638171, at *3  (E.D.N.Y. July 22, 2004) ("[c]hallenges to the weight of the evidence supporting a conviction are not cognizable on federal habeas review") (citing *Maldonado*, 86 F.3d at 35); *Camacho v. McKinney*, No. 04 Civ.2226, 2004 WL 1490308, at *1 (S.D.N.Y. July 1, 2004)

---

[17]      In certain instances, it is appropriate for courts to construe claims challenging the weight of the evidence liberally as one challenging the sufficiency of the evidence presented at trial.  *See McBride*, 2002 WL 523275, at *4 n.2 (construing claim of *pro se* petitioner alleging that verdict was against weight of evidence as challenge to sufficiency of evidence).  However, since Chavez-Florez's petition challenges **both** the weight **and** the sufficiency of evidence presented against him, *see* Petition at attached pp. 19-23, it does not appear to be appropriate for this Court to construe Chavez-Florez's claim challenging the weight of the evidence as one attacking the sufficiency of the evidence, particularly since the latter claim was specifically found by the Appellate Division to have been procedurally defaulted.  *Chavez-Flores*, 259 A.D.2d at 984.

("petitioner's first ground ... arguing only that the verdict was against the weight of the evidence – [] raises no claim cognizable in a federal habeas corpus proceeding"); *Brown v. Fischer*, No. 03 Civ. 9818, 2004 WL 1171277, at *6 (S.D.N.Y. May 27, 2004) (Peck, M.J.) ("[i]t is well-settled that a weight of the evidence claim is not cognizable on federal habeas review") (citations omitted).

**D.     Remaining Claims**

**1.     Standard of Review**

Under the AEDPA, a federal court may not grant habeas relief to a state prisoner on a claim:

> that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
>> 1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law,
>> as determined by the Supreme Court of the United States; or
>>
>> 2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented
>> in the State court proceeding.

28 U.S.C. § 2254(d); *see also Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).  The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Boyette*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

### 2.   Substance of Remaining Claims

#### i.   Prosecutorial Misconduct

As noted above, petitioner is procedurally barred from asserting several of his claims alleging prosecutorial misconduct.  However, although the "majority" of such claims were denied by the Fourth Department as unpreserved for its review, *see Chavez-Flores*, 259 A.D.2d at 984, that Court denied the remaining claims alleging prosecutorial misconduct on the merits, finding "those errors that were preserved were not so egregious or prejudicial as to deprive defendant of a fair trial."  *Id.* (citations omitted).

Since the law applicable to claims alleging prosecutorial misconduct is clearly established, *see Davis v. Keane*, No. 97 CIV. 8328, 2000 WL 1041454, at *7-8 (S.D.N.Y. July 28, 2000) (citing *United States v. Young*, 470 U.S. 1, 11 (1985) and *Donnelly*, 416 U.S. 637, 642-43)), this Court must determine whether the Appellate

27

Division's denial of these aspects of Chavez-Florez's prosecutorial misconduct claims on the merits is either contrary to, or represents an unreasonable application of, relevant Supreme Court precedent.

### a.       Clearly Established Supreme Court Precedent

A criminal defendant's right to a fair trial is mandated by the Due Process Clause. *Albright v. Oliver*, 510 U.S. 266, 273 n.6 (1994) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)).  For habeas relief to be granted based on a claim of prosecutorial misconduct, however, the alleged misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

### b.       Contrary to, or Unreasonable Application of, Supreme Court Precedent

### 1.       References to Chavez-Florez's Pre-Arrest Silence

Petitioner argues that the prosecution improperly referred to his pre-arrest silence during its case-in-chief against Chavez-Florez.  Petition at attached p. 16.  Chavez-Florez notes that in response to the prosecution's questions, Deputy Workman, the individual who observed petitioner walking along the southbound lane of Route 481 the morning of August 27, 1995 (Trial Tr. at pp. 605-09), improperly testified that when he asked petitioner how blood came to be on his person, Chavez-Florez failed to answer

Deputy Workman's question.  *See* Petition at attached p. 16; *see also* Trial Tr. at pp.

612-13.  Petitioner also notes that the prosecutor referred to this testimony in his closing

argument.  *See* Petition at attached p. 15; *see also* Trial Tr. at p. 1962.

 In considering this claim, the Court notes that Chavez-Florez's silence may well

have been properly admitted into evidence because an individual's silence in response to

a non-custodial statement is admissible when the circumstances are such as to make the

failure to respond probative.  *Irizarry v. Keane*, No. CV-91-4610, 1992 WL 245982, at

*9 (E.D.N.Y. Aug. 31, 1992) (citations omitted).  Regardless, the few, brief references

to Chavez-Florez's pre-arrest silence during the course of Chavez-Florez's trial did not

infect Chavez-Florez's trial with unfairness so as to make his conviction a denial of due

process.  *Darden*, 477 U.S. at 181; *Donnelly*, 416 U.S. at 643; *Smith v. Donelli*, No.

03-CV-3464, 2004 WL 1635831, at *4 (E.D.N.Y. July 22, 2004) (citations omitted).

## 2.    References to Chavez-Florez's Post-Arrest Silence

 Petitioner also faults the prosecutor for his reference during the course of

Chavez-Florez's criminal trial to his silence after his arrest.  Specifically, petitioner

argues that the prosecutor improperly:  i) brought out during Chavez-Florez's cross-

examination, and Basualdo's rebuttal testimony, that Chavez-Florez never asked

Basualdo whom petitioner was alleged to have killed, or where or when the killing took

place (Petition at attached p. 16; *see also* Trial Tr. at pp. 1810, 1838, 1865); and ii)

argued in his summation that while being transported to the police station during the

morning of August 27, 1993, Chavez-Florez "didn't ask one question" (Petition at

attached p. 15; Trial Tr. at pp. 1968-69).[18]

Although a prosecutor may not rely upon an individual's post-arrest silence "as

evidence from which [the jury is] allowed to draw any impermissible inference," *Greer*

*v. Miller*, 483 U.S. 756, 764-65 (1987), in determining whether the prosecution's

conduct deprived a criminal defendant of his right to a fair trial so as to warrant the

granting of a federal habeas petition, courts must look to the severity of the prosecutor's

conduct; the measures, if any, the trial court took to remedy any prejudice; and the

certainty of conviction absent the wrongful conduct. *Bentley v. Scully*, 41 F.3d 818, 824

(2d Cir. 1994); *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990); *Palmer v.*

*Senkowski*, 2002 WL 54608, at *4 (S.D.N.Y. Jan. 15, 2002) (citations omitted); *see also*,

*Darden*, 477 U.S. at 181-83; *Donnelly*, 416 U.S. at 644-47.

The prosecution's questions to Chavez-Florez during his cross-examination

_____

[18]     In opposing Chavez-Florez's appeal, the District Attorney argued that
Chavez-Florez never registered any objection during his trial that the prosecutor had
improperly referred to Chavez-Florez's post-arrest silence, and therefore failed to preserve
this issue for appellate review. Resp. Br. at p. 45 (citations omitted). Respondent argues
that this claim is therefore procedurally barred. Dkt. No. 8 at pp. 9-11. However, in
*Hawkins v. LeFevre*, 758 F.2d 866 (2d Cir. 1985), the Second Circuit specifically held that
New York courts do not require criminal defendants to lodge objections in order to preserve
claims arising out of a defendant's post-arrest silence. *Hawkins*, 758 F.2d at 871 (citations
omitted). The *Hawkins* court therefore concluded that "the Appellate Division must have
considered Hawkins's constitutional claim on the merits ... [and] Hawkins is [therefore] not
procedurally barred from raising [t]his constitutional claim." *Id.* (citations omitted).
Therefore, this Court concludes that Chavez-Florez's claims relating to the prosecution's
reference to his post-arrest silence were not found to have been procedurally barred by the
Fourth Department.

regarding his failure to ask the authorities whom he was alleged to have killed, and where and when the homicide occurred, *see* Trial Tr. at p. 1810, were improper, as were the nearly identical questions posed to Basualdo during rebuttal.  Trial Tr. at pp. 1838, 1865.  *See Miranda*, 384 U.S. at 468 n. 37; *Doyle v. Ohio*, 426 U.S. 610, 619 (1976).  Likewise, the prosecutor should not have referred to that silence during his summation.  Trial Tr. at pp. 1968-69; *see Miranda*, 384 U.S. at 468 n. 37; *Doyle*, 426 U.S. at 619.

However, these brief comments, although improper, were not so prejudicial to Chavez-Florez as to deny him a fair trial.  Additionally, Judge McCarthy interrupted the prosecutor's summation after his comment regarding Chavez-Florez's silence, informed the jury to disregard the comment, and re-iterated his earlier instruction that a person under arrest or in custody has no duty or obligation to speak to anyone or to ask any questions.  Trial Tr. at p. 1969.  Finally, in light of the compelling evidence presented against Chavez-Florez, including:  i) Stone-Martinez's contact with the police regarding Chavez-Florez hours before her death; ii) Chavez-Florez's bloody footprint on the porch of Stone-Martinez's home at the time she was killed; and iii) the victim's blood on Chavez-Florez's shirt hours after she was stabbed to death, has satisfied this Court that Chavez-Florez's conviction on the second degree murder charge was certain even absent the prosecutor's wrongful conduct.  *Bentley*, 41 F.3d at 824; *Floyd*, 907 F.2d at 355; *Pinkney v. Keane*, 737 F.Supp. 187, 190, 198-99 (E.D.N.Y. 1990); *Palmer*, 2002 WL 54608, at *4.

### 3.        Reference to Chavez-Florez's Incarceration

During Chavez-Florez's trial, an officer of the Oswego police department noted

that in the photograph the detective was asked to identify, Chavez-Florez was wearing a

shirt issued to him by the Oswego County Jail.  Trial Tr. at p. 777.  Petitioner argues that

this testimony was improper and deprived Chavez-Florez of his right to a fair trial.

Petition at attached p. 18.

This aspect of Chavez-Florez's petition, however, appears to overlook the fact

that defense counsel noted in his summation that Chavez-Florez had been incarcerated

since the time he was arrested for the crime.  Resp. Br. at p. 50 (citing Trial Tr. at pp.

1929-30).  Since defense counsel specifically referenced Chavez-Florez's custodial

status in his summation, it is apparent that the prosecution's reference to the jail clothing

Chavez-Florez was wearing in the picture identified by one of its witnesses did not

infect Chavez-Florez's trial with such unfairness as to make his conviction a denial of

due process.

### 4.        Cumulative Effect of Prosecutorial Misconduct

Finally, this Court concurs with the Appellate Division that the cumulative effect

of the prosecutor's misconduct did not deprive Chavez-Florez of his right to a fair trial.

*See Chavez-Flores*, 259 A.D.2d at 984.  Specifically, this Court notes that the alleged

instances of prosecutorial misconduct, even viewed in the aggregate, were both brief

and isolated when viewed in the context of Chavez-Florez's trial.  *E.g.*, *Bentley*, 41 F.3d

32

at 824-25 (denying prosecutorial misconduct claim where prosecution presented "compelling evidence" against petitioner and alleged misconduct was both brief and isolated); *Lugo v. Kuhlmann*, No 98-Civ-8662, 1999 WL 946793 at *19-20 (S.D.N.Y. Oct. 7, 1999) (no prejudice "based on the lack of severity of the alleged misconduct and the strong evidence of [petitioner's] guilt"); *Magnotta v. Berry*, 906 F.Supp. 907, 926 (S.D.N.Y. 1995) (no constitutional violation based on alleged prosecutorial misconduct where "petitioner almost certainly would have been convicted absent the improper conduct").

In sum, this Court concludes that the Fourth Department properly denied those claims of prosecutorial misconduct asserted by petitioner that were preserved for appellate review.  Therefore, petitioner has necessarily failed to establish that the Appellate Division's decision denying this aspect of his appeal is either contrary to, or an unreasonable application of, the above-referenced Supreme Court precedent.

### ii.    ___Brady___ Claim

In his appeal, appellate counsel argued that during sentencing, Chavez-Florez learned for the first time that, at the time of his arrest, a blood test was administered which indicated that Chavez-Florez's blood-alcohol content ("BAC") was .027 percent. App. Br. at pp. 71-73; *see also* Sentencing Tr. at pp. 11-12.  Counsel argued on appeal, and Chavez-Florez argues *pro se* in his federal habeas petition, that the prosecution's failure to provide the report containing Chavez-Florez's BAC in time for its effective

33

use at trial violated his *Brady* rights by preventing Chavez-Florez from asserting an intoxication defense at trial.  *See* App. Br. at p. 73; Petition at p. 12.[19]

### a.    Clearly Established Supreme Court Precedent

In *Brady*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the  prosecution."  *Brady*, 373 U.S. at 87.  To prove a *Brady* violation, a habeas petitioner must establish that: 1) the evidence at issue was favorable to the accused either because it was exculpatory or could have impeached a prosecution witness; 2) the evidence was suppressed by the prosecution either willfully or inadvertently; and 3) prejudice ensued from the withholding.  *Moore v. Illinois*, 408 U.S. 786, 795 (1972) (citing *Brady*); *see also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).[20]

### b.    Contrary to, or Unreasonable Application of, Supreme Court Precedent

The Fourth Department concluded that although the prosecution erred in failing to timely provide the defense with the information relating to Chavez-Florez's BAC,

------------------------------------------------------------

[19]    There is no basis for this Court to conclude that Chavez-Florez's *Brady* claim, which was asserted in the context of his prosecutorial misconduct claims, was procedurally barred.  *See* App. Br. at pp. 68, 71-73; *Chavez-Flores*, 259 A.D.2d at 984.

[20]    The rule announced in *Brady* is clearly established for purposes of the AEDPA, *see Huber v. Schriver*, 140 F. Supp.2d 265, 274 (E.D.N.Y. 2001); *Brooks v. Artuz*, 97 CIV. 3300, 2000 WL 1532918, at *5 (S.D.N.Y. Oct. 17, 2000) (state court decisions "were not contrary to, or objectively unreasonable applications of the law clearly established by the Supreme Court in *Brady* and its progeny") (citations omitted).

such *Brady* violation was not egregious and did not prejudice Chavez-Florez. *Chavez-Flores*, 259 A.D.2d at 984.

Initially, the Court notes that it is unclear whether the information relating to Chavez-Florez's BAC was exculpatory.  Chavez-Florez's BAC of .027 percent was below .05 percent, a BAC level which New York courts may, in alcohol-related motor vehicle cases, instruct jurors is "*prima facie* evidence that ... such person was ***not*** in an intoxicated condition."  *See* Veh. & Traf. L. § 1195(2)(a) (emphasis added); *see also People v. Cruz*, 48 N.Y.2d 419, 425 (1979); *People v. Lawrence*, 53 A.D.2d 705 (3d Dept. 1976) (citation omitted).

Additionally, even assuming, *arguendo*, that such evidence was exculpatory and withheld by the prosecution, it is clear that the Appellate Division correctly determined that Chavez-Florez was not prejudiced by that withholding.  The suppression of exculpatory evidence does not amount to a constitutional violation unless the evidence is material, i.e., "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Strickler*, 527 U.S. at 280 (citations omitted); *see also United States v. Bagley*, 473 U.S. 667, 682 (1985); *Boyette*, 246 F.3d at 91 (citing *Bagley*); *Chisholm*, 2004 WL 315226, at *5 (citing *Strickler*); *Livingston v. Herbert*, 00-CV-1698, 2002 WL 59383, at *3 (N.D.N.Y. Jan. 3, 2002) (Homer, M.J.), *adopted*, (N.D.N.Y. Jan. 25, 2002) (Kahn, J.), *aff'd*, (2d Cir. Sept. 11, 2002).

At trial, Chavez-Florez specifically *denied* having consumed any alcohol near the point in time at which the victim was killed. *See* Trial Tr. at pp. 1756, 1783. "[T]here is no requirement that the government must disclose to the defense that material which would allow the defendant to impeach his own witness." *United States v. Kimley*, No. 01-4324, 60 Fed.Appx. 369, 371, 2003 WL 1090706, at *2 (3d Cir. 2003)[21] (citing *Giglio v. United States*, 405 U.S. 150, 154-55 (1972)).

Based upon the foregoing, this Court concludes that the evidence relating to Chavez-Florez's BAC was not favorable to Chavez-Florez's defense to the charges. Additionally, in light of Chavez-Florez's trial testimony in which he denied consuming alcohol prior to the homicide, the prosecution's failure to provide the defense with the BAC evidence in time for its effective use at Chavez-Florez's trial did not prejudice Chavez-Florez.[22]   Therefore, petitioner has not established that the Fourth Department's decision denying this aspect of his appeal is either contrary to, or an unreasonable application of, *Brady*.   This Court therefore recommends that this aspect of petitioner's second ground for relief be denied.

### iii.   Trial Court Error During Prosecution's Rebuttal

---

[21]   Although the *Kimley* decision is not precedential value in the Third Circuit, *see* Third Cir. Internal Operating Procedures § 5.3, the Third Circuit's rules relating to non-precedential opinions neither discourages nor cautions federal courts from other circuits against citing such opinions. *See id.* at §§ 5.1-5.7.

[22]   Additionally, Chavez-Florez testified at trial and could therefore have testified regarding the issue of whether he was intoxicated on the day the victim was killed.

Chavez-Florez claimed in his appeal that the prosecution was improperly allowed to call Fairchild, the prosecution's forensic expert, as a rebuttal witness.  App. Br. at p. 96.  Chavez-Florez argued in that appeal – and now claims in his federal habeas petition – that Fairchild's rebuttal testimony was improper because it was identical to the testimony previously elicited by the prosecutor during his case-in-chief.  App. Br. at p. 96; Petition at attached p. 24.

### a.     Clearly Established Supreme Court Precedent

Claimed errors by state courts are not ordinarily subject to habeas review unless they deprive a defendant of a fundamentally fair trial.  *Estelle*, 502 U.S. at 72-75.  A party is entitled to habeas relief on a claim that evidence was improperly admitted against him where the introduction of that evidence "so infused the trial with unfairness as to deny [the defendant] due process of law." *Lisenba v. California*, 314 U.S. 219, 228 (1941).  The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  As the *Dowling* Court noted, only a very narrow class of such evidentiary infractions violates fundamental fairness.  *Dowling*, 493 U.S. at 352.

### b.     Contrary to, or Unreasonable Application of, Supreme Court Precedent

The Appellate Division found Chavez-Florez's claim challenging the admission of Fairchild's rebuttal testimony to be without merit.  *See Chavez-Flores*, 259 A.D.2d at

984.  Therefore, this Court must determine whether that decision is contrary to, or

represents an unreasonable application of, the above-referenced Supreme Court

precedent.

In considering this ground, this Court reviewed the testimony provided by

Fairchild during both the prosecution's case-in-chief and on rebuttal.  That review

reveals that Judge McCarthy sustained defense counsel's objection that the prosecutor

asked Fairchild a question that was improper rebuttal testimony.  Trial Tr. at p. 1819.

Fairchild then offered testimony which rebutted Chavez-Florez's testimony relating to

the origin of the victim's blood on his shirt.  *Compare* Trial Tr. at pp. 1818-25 *with* Trial

Tr. at pp. 1718, 1725.

For the erroneous admission of unfairly prejudicial evidence to amount to a

denial of due process, the evidence must have been "sufficiently material to provide the

basis for conviction or to remove a reasonable doubt that would have existed on the

record without it."  *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir.1992) (internal quotation

marks omitted); *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985) (evidence must be

"crucial, critical, highly significant" (internal quotation marks omitted)).   In assessing

materiality, courts are to review the erroneously admitted evidence "in light of the entire

record before the jury."  *Id.*  Thus, a habeas petition may be granted on such a claim

"*only* where petitioner can show that the error deprived [him] of a *fundamentally fair*

trial."  *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir.) (emphasis in original) (citations

38

omitted), *cert. denied*, 464 U.S. 1000 (1983).

Having reviewed the above-referenced portions of Chavez-Florez's trial transcript in conjunction with petitioner's arguments, this Court agrees with the Fourth Department's determination that Fairchild's limited rebuttal testimony[23] was properly admitted at Chavez-Florez's trial.  Moreover, as noted above, although the prosecution attempted to elicit improper rebuttal testimony from Fairchild, Judge McCarthy sustained defense counsel's objection to such proposed testimony.  Trial Tr. at p. 1819. This Court therefore concludes that the Fourth Department's denial of this aspect of Chavez-Florez's appeal is neither contrary to, nor an unreasonable application of, *Lisenba* and its progeny, and that this aspect of petitioner's fourth ground for relief should be denied.

### iv.   Ineffective Assistance of Trial Counsel

In his fifth and final ground, petitioner alleges that he received ineffective assistance of trial counsel.  Chavez-Florez asserts numerous instances during which he claims that his counsel rendered ineffective assistance, and argues that "a reasonable probability exists that the outcome [of Chavez-Florez's trial] was affected by counsel's inadequate representation of petitioner."  Petition at attached p. 26.

### a.   Clearly Established Supreme Court Precedent

The Sixth Amendment to the United States Constitution provides that:  "[i]n all

---

[23]   Fairchild's rebuttal testimony consisted of twelve transcribed pages; *see* Trial Tr. at pp. 1817-28; the entire trial transcript consisted of over 2,000 transcribed pages.

criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const., Amend. VI.  To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: 1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and 2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established by the Supreme Court in *Strickland*).

Since the *Strickland* standard is clearly established Federal law, as determined by the Supreme Court of the United States, *see Bell v. Cone*, 535 U.S. 685, 693-94 (2002), this Court must determine whether the finding of the Fourth Department which denied Chavez-Florez's ineffectiveness claims on appeal, *Chavez-Flores*, 259 A.D.2d at 985, is contrary to, or an unreasonable application of, *Strickland* and its progeny.

### b.    Contrary To, or Unreasonable Application of, Supreme Court Precedent

Chavez-Florez initially argues that his trial counsel rendered ineffective assistance by failing to object to the testimony of the victim's daughter, Stone, who was six years old at the time of the trial.  Petition at attached p. 26.  Petitioner argues that Stone's testimony was objectionable because it was "received solely to obtain the

40

sympathy of the jury." *Id.*   However, Stone's testimony was utilized by the prosecution to establish that the victim apparently knew her assailant.  *See* Trial Tr. at p. 455-56. Additionally, defense counsel specifically referred to Stone's testimony in his summation, arguing that Stone's failure to testify that she saw Chavez-Florez in Stone-Martinez's home on the day she was killed established that Chavez-Florez was not the individual who committed the crime.  Trial Tr. at p. 1918.  Therefore, it was not objectively unreasonable for defense counsel to refrain from objecting to Stone's testimony.

Chavez-Florez next objects to the prosecutor's characterization of Chavez-Florez during his opening and closing argument.  Petition at attached p. 26.  The Court's review of the opening statement delivered by the prosecutor, *see* Trial Tr. at pp. 245-63, fails to reveal any comments relating to Chavez-Florez to which defense counsel could have reasonably objected.  However, during his summation, the prosecutor characterized Chavez-Florez as a liar, *see* Trial Tr. at pp. 1963, 1966-67, and argued that Chavez-Florez's explanations regarding the incriminating evidence against him "changed every time."  Trial Tr. at p. 1966.  Although it is generally improper for a prosecutor to refer to a defendant as a liar, *see Green v. Herbert*, 01CIV.11881, 2002 WL 1587133, at *17 (S.D.N.Y. July 18, 2002) (collecting cases), the Court notes that the final arguments of counsel may be "vigorous and robust if based on the evidence in the record." *United States v. Smith*, 778 F.2d 925, 929 (2d Cir. 1985).  Since Chavez-Florez's trial testimony

was irreconcilable with the evidence offered by the prosecution, the prosecutor's comments regarding Chavez-Florez's credibility "while blunt and derogatory (and possibly hyperbolic), were fair comments on the evidence." *Bae v. Peters*, 950 F.2d 469, 479 (7th Cir. 1991) (citation omitted); *see also Strouse v. Leonardo*, 928 F.2d 548, 557 (2d Cir. 1991).  Thus, counsel cannot be found to have acted in an objectively unreasonable manner in failing to object during the course of the prosecution's summation.

Petitioner also faults defense counsel for failing to object to the testimony of William Dunsmoor, a prosecution witness, when he identified Chavez-Florez in a photograph and noted that in such photograph Chavez-Florez was wearing clothing issued by the Oswego County jail.  *See* Petition at attached p. 26; *see also* Trial Tr. at p. 777.  However, the record reflects that in his opening statement, defense counsel himself attempted to advise the jury that Chavez-Florez had been incarcerated since the time of his arrest, however the prosecution objected to that comment.  Trial Tr. at p. 269.  Thus, in light of counsel's opening statement, it appears to have been trial strategy on the part of defense counsel to alert the jury to the fact that Chavez-Florez had been incarcerated after he was arrested for the crime.  Objections to strategic decisions of counsel do not support a claim for habeas relief.  *See Bonneau v. Scully*, 1991 WL 90739, at *1 (S.D.N.Y. 1991) ("strategic choices of trial counsel are virtually unchallengeable in habeas corpus proceedings") (internal quotation omitted) (citing *Strickland*, 466 U.S. at

690-91), *aff'd*, 956 F.2d 1160 (2d Cir. 1992).

Chavez-Florez also argues that his trial counsel wrongfully failed to object to "the improper introduction of suppressed evidence" at Chavez-Florez's trial. Petition at attached p. 26. Although not articulated in this ground of his petition, this aspect of petitioner's ineffectiveness claim appears to relate to Chavez-Florez's argument that the prosecution wrongfully referred to comments he made to the interpreter who had been provided to Chavez-Florez after he was brought to the police station regarding the origin of the blood stains on Chavez-Florez's shirt. *See* Petition at attached p. 11. However, this portion of Chavez-Florez's petition appears to ignore the well-established principle that "statements taken without *Miranda* warnings ... can be used to impeach a defendant's testimony at trial." *United States v. Patane*, ___ U.S. ___, ___124 S.Ct. 2620, 2627-28 (2004) (citing *Oregon v. Elstad*, 470 U.S. 298, 307-308 (1985); *Harris v. New York*, 401 U.S. 222[, 225] (1971)); *see also United States v. Havens*, 446 U.S. 620, 627-28 (1980). Since Chavez-Florez testified that the blood on his shirt was caused when Stone-Martinez spat blood on him, the prosecution was properly allowed to refer to the (previously suppressed) statements Chavez-Florez had made to his interpreter relating to the origin of the blood stains which were inconsistent with Chavez-Florez's trial testimony. *Compare* Trial Tr. at p. 1724-36 *with* Trial Tr. at pp. 1838-39. Thus, it was not objectively unreasonable for defense counsel to refrain from objecting to the introduction of that testimony.

43

Petitioner also argues that defense counsel's performance was deficient because he failed to object to the prosecution's suggestion that Chavez-Florez did not have the right to remain silent after he had been placed under arrest.  Petition at attached p. 26. However, Chavez-Florez has not referred this Court to any page in the more than 2,000 pages of trial transcripts as support for this argument.  The petitioner has the burden of proving in his habeas petition that his constitutional rights were violated in the state court proceeding.  *See Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941) (petitioner has the burden of "sustaining his allegations by a preponderance of evidence" on collateral review) (other citations omitted); *Frazier v. New York*, 187 F.Supp.2d 102, 108 (S.D.N.Y. 2002) (citation omitted).   Petitioner's failure to provide specifics regarding this aspect of his ineffectiveness claim represents a failure on his part to satisfy this burden.[24]

Next, petitioner faults counsel for allegedly failing to object when the prosecutor asked Chavez-Florez if he had practiced his testimony.  Petition at attached p. 26. However, the record reveals that defense counsel lodged an objection – which was sustained by Judge McCarthy – when that question was posed to Chavez-Florez during his cross-examination.  Trial Tr. at p. 1709.  Thus, this theory does not offer petitioner a

---

[24]      The Court notes that in his closing argument, the prosecutor argued that Chavez-Florez did not "ask one question" while he was being driven to the police station after his arrest.  Trial Tr. at p. 1969.  However, as noted above, Judge McCarthy informed the jury to disregard that comment and re-iterated his earlier instruction to the jury that Chavez-Florez was not under any duty or obligation to speak to anyone after he was arrested. Trial Tr. at p. 1969.

basis for federal habeas relief.

Chavez-Florez also contends that he received constitutionally deficient assistance of counsel when his trial attorney failed to object to portions of the prosecutor's summation. Petition at attached p. 26. However, after having reviewed that closing argument, together with significant portions of the testimony presented by the prosecution at Chavez-Florez's trial as well as the testimony offered by Chavez-Florez in his defense to the charge against him, it appears to this Court that objections to the prosecution's summation by Chavez-Florez's counsel were not constitutionally required.

Chavez-Florez next faults trial counsel for failing to file a suppression motion prior to trial regarding the imprint taken of Chavez-Florez's foot. *See* Petition at attached p. 26. However, the Court notes that even if the imprint that had been taken of Chavez-Florez's foot been suppressed by Judge McCarthy, the County Court noted that it would have nevertheless permitted the authorities to take ***another*** imprint of Chavez-Florez's foot, which he then would have allowed the prosecution to use as evidence against Chavez-Florez at his trial. Trial Tr. at p. 925. Thus, petitioner was clearly not prejudiced by his attorney's failure to timely file a motion to suppress the imprint taken of Chavez-Florez's foot.

Finally, Chavez-Florez argues that his trial attorney improperly failed to call an expert witness to testify that the samples of blood taken at the crime scene deteriorated due to lack of refrigeration. Petition at attached p. 26. However, defense counsel

elicited testimony from a prosecution witness which indicated that:  i) the blood samples that were tested by the authorities were not initially placed in a refrigerated vault; and ii) biological samples degrade quicker, and "bacterial growth" occurs more rapidly, when such specimens are not refrigerated.  Trial Tr. at pp. 1313-16.  In light of that evidence, petitioner has not established that it was objectively unreasonable for defense counsel to refrain from presenting expert testimony which similarly indicated that blood samples deteriorate if they are not maintained in a refrigerated environment.

In sum, after thoroughly considering all of petitioner's claims alleging ineffective assistance of trial counsel, this Court concludes that Chavez-Florez has not demonstrated one instance during the course of the criminal proceedings below when his attorney's performance was both objectively unreasonable and such performance prejudiced Chavez-Florez.  A habeas petitioner "must show both that counsel's performance was deficient *and* that the deficient performance prejudiced the defense" *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (emphasis in original) (internal quotations and citation omitted).  Petitioner has not met this burden, and has wholly failed to demonstrate that the Fourth Department's decision denying this aspect of Chavez-Florez's appeal is either contrary to, or represented an unreasonable application of, *Strickland* and its progeny.  Therefore, this Court recommends that this final ground in Chavez-Florez's petition be denied.

**WHEREFORE**, based upon the foregoing, it is hereby

**RECOMMENDED**, that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).


Dated:          March 14, 2005
                Syracuse, New York


George H. Lowe
United States Magistrate Judge

47